STATE OF NEBRASKA, APPELLEE, V. DOROTHY M. JACKSON,
APPELLANT.

435 N.W.2d 893

Filed February 17, 1989.   No. 88-168.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant-appellant, Dorothy M. Jackson, was charged by information in the district court for Douglas County with murder in the second degree and the use of a knife to commit a felony. After a jury trial, defendant was found guilty on both counts. Defendant was sentenced to 35 years in the Nebraska Center for Women at York on the murder charge and to a consecutive term of 6 $^2/_3$ to 20 years on the knife charge. Defendant timely appealed to this court and assigns two errors, alleging that the trial court erred (1) in overruling the defendant's motion for a mistrial and (2) in overruling the defendant's motion to have the State's expert witness sequestered. We affirm.

The record, reviewed in the light most favorable to the State, *State v. Jones*, 230 Neb. 968, 434 N.W.2d 333 (1989), shows the following. At about 4:30 on the afternoon of May 16, 1987, an Omaha police officer responded to a radio call concerning a

stabbing at 16th and Binney Streets in Omaha. This officer was directed to the rear of 1617 Binney Street, where he observed the victim, John I. Williams, stabbed in the chest, sitting unconscious in a chair in the garage behind the residence. The officer also saw the defendant standing about 40 feet from the victim, holding a knife.

The defendant was placed in custody and taken to Omaha police headquarters. Although the defendant was not questioned by officers during her transportation, she continually mumbled about the stabbing and indicated that "she had did it before she knew what had happened." Once at police headquarters the defendant was informed of her rights under the *Miranda* decision. After being so informed, and waiving her rights, the defendant gave an inculpatory statement. The following morning, the victim died from the stab wound.

The victim was 68 years old and had Parkinson's disease. He had some difficulty walking at all times. After drinking, he would either have to crawl, hang onto things, or receive assistance in order to get around. Defendant was 44 years old. She was not married to the victim, but had lived with him for 4 years before the murder. Defendant and the victim were drinking throughout the day on May 16, 1987, in the garage behind their residence. A 9-year-old neighbor testified that he had heard defendant "cussing" the victim and saw the defendant go into the residence, return with a knife, and stab the victim, who was seated in a chair. A 75-year-old neighbor woman testified that the defendant had gone to her home immediately after the stabbing and that while at her home the defendant said, "Miss Rose . . . I did it, I did it, I did it." Defendant testified that she had stabbed the victim, but claimed she acted in self-defense, in that the "battered wife" syndrome prevented her from correctly assessing the situation she was in.

With regard to defendant's first assignment of error, insofar as she contends that the court erred in permitting the prosecutor to cross-examine defendant "extensively on a collateral matter, severely prejudicing the Defendant before the jury," we need only say that error, if any at all, was adequately corrected by the court's instruction to the jury to ignore such evidence. The

question stems from the defendant's position that she, because of a "battered wife" syndrome, had the perception that, under the Nebraska law of justification or self-defense (NJI 14.33), she could not retreat from the situation before her and that she was in imminent danger. Defendant's counsel admitted, and later the court instructed the jury, that defendant did not contest the facts that she was not in imminent danger and that she could have retreated.

The issue of the appropriateness of the "battered wife" syndrome evidence is not before this court because the issue was submitted to the jury in the manner desired by the defendant, and no party raises any issue in this court on that issue. What is before the court is the propriety of the way in which certain evidence, brought forward by the State in its cross-examination of defendant, was handled.

Apparently, in order to provide a basis for the application of the "battered wife" syndrome, defendant adduced testimony that she had been victimized by men during a substantial portion of her life.

The defendant testified that she had been sexually abused by her uncle on repeated occasions beginning when she was 8 years old and that when she was 13 years old her father began to sexually penetrate her, resulting in a pregnancy. The father was eventually sentenced to serve a 10-year prison term for incest.

The defendant also testified that she had been married for 10 years to a man with whom she had two children. The defendant testified that this man physically abused her during the entire course of their marriage.

During the last 2 years of the defendant's relationship with the victim, the defendant testified, the victim began to physically and emotionally abuse her. The couple drank heavily, particularly on weekends, and would have heated arguments. During the course of these arguments the defendant alleged she received bloody noses and black eyes and, on one occasion, on January 28, 1987, was taken to a hospital after she sustained cracked ribs when the victim struck her with a gin bottle.

The defendant testified that, on that occasion, she had told hospital employees and the police that she had been beaten by unknown parties. She further testified that she had not told the

police that the victim had struck her, in order to protect the victim. The defendant bases her first assignment on the following testimony elicited from her by the State during cross-examination:

Q. Is that the last time you went to the hospital for any type of injury, before John died?

A. Yes, it is.

Q. You're positive about that? I want you to think about this.

A. For an injury?

Q. Uh-hum.

A. The cracked ribs. Yes.

Q. On January 28th?

A. As far as I remember, yes. I've been back to the hospital but it wasn't for that.

Q. How about did you go to the hospital for any type of injury within a couple of weeks before John died?

A. No.

Q. You're absolutely positive about that?

A. No, I'm not positive. I just can't. . .

. . . .

Q. Specifically, I want to call your attention to Sunday, May the 10th, 1987. Do you remember — that's only six days before John died. Do you recall what you did that day?

A. No, I don't.

Q. Did you go to the hospital that day?

A. I could have.

Q. You don't remember?

A. I remember before John died I — before he died, yes, I did go to the hospital.

Q. All right. If you went to the hospital on May the 10th, do you know why you went to the hospital?

A. I was feeling lightheaded and dizzy.

. . . .

Q. Were you physically injured?

A. No.

. . . .

Q. Isn't it a fact, Miss Jackson, that on Sunday, May

the 10th, 1987, you spent all day drinking beer and drinking wine coolers and you fell down and hurt yourself and the police took you to the hospital?

. . . .

Q. Do you remember that happening?

A. No.

At this time, the defendant's counsel objected as to relevancy and on the grounds that the prosecutor had violated the rules of discovery by not disclosing the medical report which indicated that the defendant had been to the hospital on May 10.

The determination of whether to grant a motion for a mistrial lies within the discretion of the trial court. A mistrial is properly granted when an event occurs during the course of the trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus would result in preventing a fair trial. *State v. Fraser*, 230 Neb. 157, 430 N.W.2d 512 (1988); *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986).

The trial court overruled the defendant's motion for mistrial, but did instruct the jury to disregard all testimony given by the defendant beyond where she denied any recollection of having gone to the hospital. When the trial court grants a motion to strike testimony and the jury is admonished to disregard it, ordinarily, any error is thereby considered cured. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984).

Defendant cites this court to *State v. Zobel*, 192 Neb. 480, 484, 222 N.W.2d 570, 572 (1974), where we held: "If a witness is cross-examined on a matter collateral to the issues, his answer cannot be subsequently contradicted by the party conducting the examination."

Defendant also relied on *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988), where we held that a witness cannot be impeached as to collateral or immaterial matters brought out on cross-examination.

While these cases correctly state the law in this area, they have no application to the case at bar, since the prosecutor's cross-examination of the defendant on whether she had been hospitalized was not a collateral issue to the defense presented. The defendant confessed to stabbing the victim and causing the

injury which resulted in the victim's death. The defendant defended solely on her allegation that she suffered from "battered wife" syndrome, and it was not improper for the prosecutor to ask the defendant whether she had been hospitalized on any other occasion on account of injuries not caused by the victim. We cannot say under the circumstances that the prosecutor's conduct in impeaching the defendant on this issue was improper, since evidence that the defendant had injured herself on at least one occasion went to the heart of her defense. The trial court would not have erred had the court treated defendant's statements as not being on a collateral issue. In any event, as stated above, the court instructed the jury to disregard the testimony. There was no error in the actions of the trial court on this issue.

The defendant's argument that the court erred by not granting a mistrial because the prosecutor had failed to disclose the hospital report prior to the trial also fails. Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), a prosecutor may not withhold evidence that is material to a defendant's guilt or innocence. This rule also applies to impeachment evidence, *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), which, if disclosed, may make the difference between conviction and acquittal. However, in *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the U.S. Supreme Court held that such evidence is only material where there is a "reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different." We are not convinced, from our review of the record, that the results of the trial would have been different had the prosecutor not been allowed to impeach the defendant. The trial court properly denied the defendant's motion for a mistrial.

The defendant also assigns as error the trial court's actions in overruling defendant's motion to have the State's expert witness sequestered. The court ruled on defendant's motion as follows:

[Y]our motion to sequester the normal, everyday witnesses, that's granted . . . .

So far as the presence of [the State's expert witness] is concerned at the time the defendant [and the defendant's

expert testify].

. . . .

. . . [The State's expert witness] may be present in the courtroom.

The law is clear in this area:

> At the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and he may make the order on his own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Neb. Rev. Stat. § 27-615 (Reissue 1985).

The prosecutor informed the court as to why the presence of the State's expert witness was essential to the State's case:

> Further, your Honor, Dr. Kenney has no opportunity under the law, unless the defense allows me to, to examine the defendant at all, other than to be present in court when she testifies. Further, the State should be allowed the assistance of Dr. Kenney to be present with the State at the time the expert of the defense testifies for several reasons, one of which is that no medical report has ever been provided to me by the defense from Dr. Mary Kenning. . . . [Dr. Kenney] will be able to . . . assist the State in how to proceed with Dr. Mary Kenning where I would not be able to do so.

In addition, the prosecutor designated Dr. Kenney as the State's representative during the testimony of defendant's witness Dr. Kenning.

The trial court did not abuse its discretion by allowing the State's expert witness to be present in the courtroom in the circumstances of this case, nor did the trial court err in the other areas suggested by defendant. The judgment of the trial court is correct and is affirmed.

AFFIRMED.