STATE OF NEBRASKA, APPELLEE, V. MARVEL JONES, APPELLANT.
577 N.W.2d 302

Filed March 17, 1998.    No. A-97-486.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, IRWIN, and MUES, Judges.

MUES, Judge.

## INTRODUCTION

Marvel Jones appeals his conviction for first degree sexual assault, second offense.

## CAUTION

■ We once again caution that a document entitled "bill of exceptions," but which is not prepared in accordance with our rules, is not such a bill and that the filing of an improperly prepared document in the nature of a bill of exceptions may result in a case's being treated as if no bill had been filed. *In re Interest of R.G.,* 238 Neb. 405, 470 N.W.2d 780 (1991). Neb. Ct. R. of Prac. 5B(6)c (rev. 1996) in pertinent part provides: "The full name of each witness and whether the examination is direct, cross, or further examination shall be stated at the top of each page [of the bill of exceptions] of the witness' testimony."

Our review of the bill of exceptions in the present case has been made unnecessarily complicated because this rule has not been followed. Our review was even further complicated by the facts that the court held several hearings on motions during the course of the trial and that the index does not reflect this. See rule 5B(6)a. The fact that we have taken the time to review this bill of exceptions should not be taken as an indication that we will ignore such violations in the future.

## BACKGROUND

On the evening of August 20, 1996, Christine D., 13 years of age, was visiting two friends, Crystal L., also 13, and Tami F., 15 years of age. Crystal and Tami are sisters and lived with their mother, Janice L. Later in the evening, another friend, Michael T., 14 years of age, joined them.

Jones, age 38, was friends with Janice and occasionally stayed at the house. Earlier that evening, Jones called and spoke with Janice, and she informed Jones not to come to the house. Either Crystal or Tami subsequently spoke with Jones and invited him to come over. Christine, Crystal, Tami, and Michael met Jones outside the house sometime around midnight. The group then "snuck . . . in the back door" and went downstairs to

Crystal's bedroom because Michael and Jones were not supposed to be in the house. The group was "hanging out" for awhile, listening to music. Later, they heard someone coming down the stairs, so Michael and Jones crawled under Crystal's bed.

Michael testified that while under the bed, Jones suggested that he would give Michael an ounce [of marijuana] if Michael would let Jones feel his penis. Without responding to Jones' comment, Michael crawled out from underneath the bed and hid behind a chair. Shortly thereafter, Christine came into the room and crawled under the bed with Jones. Jones asked her to move closer, and she complied. Jones then put his hand down Christine's pants and put his finger in her vagina.

Michael testified that he could see Jones rubbing his hand "over Christine's boxers on her crotch." Michael moved from behind the chair and went and told Crystal, who was in Tami's room, what had happened. Michael then went back to Crystal's room and lifted the bedspread and looked under the bed. Christine seemed startled and got out from underneath the bed.

Crystal testified that after hearing what happened to Christine, she went into her room, crawled underneath the bed, and asked Jones what had happened. She said that Jones initially denied anything happened but subsequently admitted that he had put his finger in Christine's vagina. Jones then said he loved Crystal and kissed her on the lips. Crystal then crawled out from underneath the bed and returned to Tami's room.

Tami testified that a week prior to this incident, she was in her room sleeping and awoke to find that someone was touching her in her vaginal area. Tami could see it was Jones. Jones then put his finger in her vagina. Tami pretended she was still asleep and rolled over. After she rolled over, Jones left her alone.

On August 23, 1996, police officer Timothy Carmichael went to interview Jones regarding the incident. When asked about the events of August 20, Jones denied being at Janice's residence on that date and denied ever having sexual contact with any of the girls. Jones agreed to take a polygraph examination.

The polygraph was administered on August 30, 1996, by police officer Jeffrey Howard. Prior to administering the exam-

ination, Howard explained Jones' *Miranda* rights to him and Jones signed a *Miranda* warning and waiver form. After administering the test, Howard conducted a "post-test interview." During the interview, Jones admitted that he had put his finger in Christine's vagina. Howard then placed Jones under arrest for first degree sexual assault.

A jury trial was held February 25 through 28 and March 3, 1997. Jones testified at trial and admitted that he was in the residence and in the basement but denied that he had been under the bed or touched the children. The jury found Jones guilty of first degree sexual assault, second offense. The district court sentenced Jones to 25 to 40 years' imprisonment, with credit for time served. Jones timely appeals.

## ASSIGNMENTS OF ERROR

Restated, Jones alleges the trial court erred in (1) admitting evidence of other crimes, (2) failing to disclose complete copies of reports used by witnesses to refresh their recollection, (3) admitting Jones' confession, and (4) finding there was sufficient evidence to sustain the conviction.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court, in reviewing a criminal conviction, does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact; a conviction will be affirmed in the absence of prejudicial error if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997). See *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997).

Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), and Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Freeman, supra.*

A party waives the right to assert on appeal prejudicial error concerning the admission of evidence received without objection. *State v. Buechler*, 253 Neb. 727, 572 N.W.2d 65 (1998).

## DISCUSSION

*Prior Bad Acts.*

Prior to trial, pursuant to rule 404(2), the State filed notice that it intended to use evidence of other crimes, wrongs, or acts. After trial commenced, the court held a hearing to determine the admissibility of evidence of Jones' misconduct toward Crystal, Michael, and Tami. At the hearing, testimony was adduced as set forth above. The trial court determined that the events did happen as described by Michael, Crystal, and Tami and that the evidence was relevant for proof of motive, opportunity, plan, knowledge, or identity.

Rule 404(2) is a rule of inclusion, rather than exclusion, and it permits the use of relevant bad acts for all purposes except to prove the character of a person in order to show that the person acted in conformity with that character. *State v. Carter,* 246 Neb. 953, 524 N.W.2d 763 (1994). An appellate court reviews the admission of other acts under rule 404(2) by considering (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted. *State v. Freeman, supra.* Because the exercise of judicial discretion is implicit in rule 401, it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 404(2) and 403, and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Freeman, supra.* Judicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Carter, supra.*

Sexual crimes are of a nature that evidence of other similar sexual conduct has independent relevance, and such evidence may be admissible against a defendant irrespective of

whether that conduct involved the complaining witness or third parties. *State v. Freeman, supra.* Evidence of repeated incidents may be especially relevant in proving sexual crimes committed against persons otherwise defenseless due to age—either the very young or the elderly. Without proof by other acts of a defendant, except in cases of the fortuitous presence of an eyewitness, those crimes would likely go unpunished. *State v. Carter, supra.*

Tami testified that less than a week before the incident in question happened, she awoke during the middle of the night to find Jones putting his finger in her vagina. After Tami rolled over and pretended to be asleep, Jones left her alone. Although in the present case Christine was not asleep, the incidents otherwise have enough similarities to show identity and motive. See *State v. Carter, supra.* In regard to the testimony of Michael and Crystal, both incidents occurred in close temporal proximity to the assault upon Christine. Jones had initially denied being in the house at the time in question, let alone underneath the bed. The trial court properly concluded that this evidence was admissible for the purpose of showing proof of motive, opportunity, plan, knowledge, or identity.

When the evidence offered has qualified under the first two prongs of the test for admission under rule 404(2), i.e., relevance and proper purpose, the determination of whether the evidence is unfairly prejudicial depends upon whether the trial court properly instructed the jury on the limited purpose of the admission of the evidence. *State v. Freeman,* 253 Neb. 385, 571 N.W.2d 276 (1997).

After Michael finished testifying, the court instructed the jury:

> Ladies and gentlemen of the jury, I intended to give you a limiting instruction before [Michael] testified and I neglected to do so. So, this instruction pertains to his testimony, and is in regard to [Michael's] testimony regarding anything that may have occurred between him and Mr. Jones.
>
> You are instructed that evidence of other crimes, wrongs or acts, other than those charged in the information, are not admissible to prove the character of a person

in order to show that he or she acted in conformity therewith. Such evidence, however, may be admissible for other purposes; such as proof of motive, opportunity, preparation, plan, knowledge or identity.

It is for these limited purposes that the Court allows evidence of other crimes, wrongs or acts not charged in the information. You must consider that evidence only for these limited purposes and for no other purposes. This same limiting instruction is called to your attention regarding the testimony of the next witness [Crystal].

The court gave a similar instruction during the testimony of Tami. We conclude that the evidence was not unfairly prejudicial and that the trial court did not abuse its discretion by admitting this evidence.

*Confession.*

Prior to trial, Jones filed a request for a *Jackson v. Denno* hearing to determine the admissibility of Jones' statements to Howard. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Jones did not allege that his statement was involuntary and did not file a motion to suppress. At trial, outside the presence of the jury, a hearing was held to determine whether Jones' statement was voluntary. After hearing testimony, the trial court concluded that Jones' statement was made freely, voluntarily, and knowingly. Trial then resumed.

■ When Howard, the officer who administered the polygraph, subsequently testified as to the statements made by Jones, Jones' counsel made no objection. In order to preserve a question concerning the admissibility of evidence for review on appeal, it is necessary to object at trial to the admission of evidence even though it was earlier considered at a hearing on a motion to suppress, which motion was overruled. See *State v. Cody*, 236 Neb. 69, 74, 459 N.W.2d 195, 199 (1990) (Nebraska Supreme Court observed, "We see no reason why the same rule should not apply where there has been a previous ruling on the voluntariness of the statement in a *Jackson v. Denno* hearing but no objection to the evidence in the trial itself"). Thus, Jones failed to preserve this error because no objection was made at trial.

*Police Report.*

Police officer John Carter testified that on the evening of August 21, 1996, he went to Tami and Crystal's house in response to a reported sexual assault. Carter testified that he arrived at the residence at approximately 6:07 p.m. and had contact with Tami, Janice, Crystal, and Christine. Carter offered no additional testimony regarding the events of that evening. On cross-examination, Carter was asked if he had prepared a report as part of his investigation. Carter replied that he had. Carter was then asked if he had reviewed that report prior to testifying. Carter replied that he had. Carter was then asked if part of the reason he reviewed his report was to "get fresh dates and addresses and whatever details [he] thought [he] might want to refresh." Carter acknowledged that was true.

Jones' counsel then informed the court that pursuant to Neb. Evid. R. 612, Neb. Rev. Stat. § 27-612 (Reissue 1995), he wanted access to the full report. The State's attorney claimed, in essence, that the report contained matters unrelated to Carter's testimony. The jury was given a temporary recess, and the court reviewed Carter's police report. Jones disingenuously states that the "trial court reviewed the report and ordered no disclosures." Brief for appellant at 15. In truth, after reviewing the document, the court concluded that Jones was only entitled to the first page of the report which gave the names and addresses of the persons contacted, the date, a brief synopsis of what was alleged to have occurred, and a sentence that the victims were transported to Lincoln General Hospital to be examined by Dr. Stacy Goodrich.

■ Rule 612 provides:

If a witness uses a writing to refresh his memory for the purpose of testifying, either before or while testifying, an adverse party is entitled to have it produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. *If it is claimed that the writing contains matters not related to the subject matter of the testimony, the judge shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.* Any portion

withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the judge shall make any order justice requires.

(Emphasis supplied.)

Jones does not contend that the failure of the trial court to allow him access to the entire document hindered his cross-examination of Carter. He did not attempt to introduce any of the portion of the report provided to him and related to Carter's testimony. Rather, he argues that had he been given access to the entire document, it "could have provided fruitful cross examination information directly affecting the credibility of Christine." Brief for appellant at 15. Even if that was true, that is not the scope of the inquiry under rule 612.

■ Under the comment to the Proposed Nebraska Rules of Evidence, rule 612 (1973), the committee states at 104:

The purpose of the phrase "for the purpose of testifying" is to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness.

Carter's testimony was limited to dates, time, place, names of persons he had contact with, and his response to a sexual assault call. Our review of the entire report shows that the trial court allowed Jones to have a copy of those portions which were related to this testimony. We fail to see how rule 612 could be read to grant Jones more. Thus, the court did not err in limiting Jones' access to the full report.

To the extent that Jones' brief contains suggestions of violations of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), Jones did not assign this as error. To be considered by an appellate court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996).

Jones' sole reference to this topic is his contention that

> Carter could have provided fruitful cross examination information directly affecting the credibility of Christine .... She apparently told the officer things about the conversation under the bed, including her being asked by Mr. Jones if she would have sex with a friend of his in exchange for money, which were not disclosed to the defense. . . .
>
> The prosecution chose to hide the entire report without providing any information from it to the defense.

Brief for appellant at 15.

> [The] suppression of material evidence favorable to an accused violates due process. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In addressing materiality, we must evaluate the omitted evidence in the context of the entire record. *United States v. Agurs, supra.* If the evidence creates a reasonable doubt of guilt that otherwise did not exist, then a constitutional error has been committed. *State v. Atwater*, 245 Neb. 746, 515 N.W.2d 431 (1994).

*State v. Thompson*, 246 Neb. 752, 754, 523 N.W.2d 246, 248 (1994).

We fail to see how this undisclosed evidence could have done anything but bolster the State's case. We conclude that this omitted evidence does not create a reasonable doubt of guilt that otherwise did not exist. See *id.*

*Sufficiency of Evidence.*

Jones' final argument is that there was insufficient evidence to sustain his conviction for first degree sexual assault.

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996).

Jones argues that without his confession and the testimony of Michael, Crystal, and Tami, there is insufficient evidence to sustain the conviction. While that might be true, we have determined that such evidence was properly admitted. It established, inter alia, that Jones, age 38, rubbed the outside of Christine's boxer shorts "on her crotch" and inserted his finger in Christine's vagina and that she was 13 years of age at the time. Neb. Rev. Stat. § 28-319 (Reissue 1995) provides, inter alia, "(1) Any person who subjects another person to sexual penetration . . . (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree."

### CONCLUSION

The evidence of other bad acts was properly admitted for the limited purpose of proving motive, opportunity, and identity. Jones waived any objections to the admission of statements he made to Howard because Jones did not object to the same when it was offered into evidence. Jones was given the full benefit of rule 612, and finally, viewing the properly admitted evidence in a light most favorable to the State, we find that it was sufficient to convict Jones.

AFFIRMED.