STATE OF NEBRASKA, APPELLEE, V. LAWRENCE ATWATER, APPELLANT.
515 N.W.2d 431

Filed April 28, 1994.   No. S-92-113.

Brent M. Bloom for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

Lawrence Atwater was charged with and convicted of two counts of robbery and two counts of use of a firearm to commit a felony in 1982. A direct appeal was taken to the Nebraska Supreme Court. The judgment was affirmed after a motion was granted allowing court-appointed defense counsel to withdraw on the grounds that the appeal was frivolous.

In 1992, Atwater's motion for postconviction relief was granted by the district court, which reinstated Atwater's direct appeal to this court. Atwater appeals from the denial of his postconviction request for a new trial based on newly discovered evidence.

## SCOPE OF REVIEW

A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hirsch, ante* p. 31, 511 N.W.2d 69 (1994); *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993).

## FACTS

We first outline a chronology of the events involved in this case:

April 15, 1982—A jury finds Atwater guilty of two counts of robbery and two counts of use of a firearm to commit a felony.

May 14, 1982—Atwater is sentenced, and the district court overrules Atwater's first motion for new trial.

May 20, 1982—Atwater files a notice of appeal to the Nebraska Supreme Court.

September 7, 1982—Atwater files a second motion for new trial in the district court, alleging newly discovered evidence.

January 21, 1983—The district court denies Atwater's

motion for new trial, finding that the new evidence would probably not be admissible and, if admitted, would not affect the outcome of the case.

January 24, 1983—Atwater files a third motion for new trial, alleging error in the district court's denial of the motion for new trial based on newly discovered evidence. The record contains no ruling on that motion.

February 17, 1983—Atwater's counsel files a supplemental notice of appeal to the Supreme Court.

March 11, 1983—Atwater's counsel files a motion to withdraw on the basis that the direct appeal is wholly frivolous.

May 25, 1983—The motion to withdraw is granted, and the judgment is affirmed by this court. See *State v. Atwater*, 214 Neb. xvii (case No. 82-371, May 25, 1983).

April 10, 1989—Atwater files a postconviction motion to vacate or set aside the sentence. In an amended motion for postconviction relief, Atwater alleges two grounds which resulted in an infringement of his constitutional rights: prosecutorial misconduct and ineffective assistance of counsel. Atwater claims that the prosecuting attorney did not comply with pretrial discovery and that the prosecutor failed to provide defense counsel with information prior to trial which would have supported Atwater's defense that his brother, Alonzo Atwater, committed the robberies. (A police report had been filed which stated that the revolver taken in the robbery of the security guard was subsequently found near a location where Atwater's brother was arrested.) The amended motion further asserts that Atwater was denied effective assistance of counsel, as guaranteed by the 6th and 14th Amendments to the U.S. Constitution, because counsel was allowed to withdraw based upon his assertion that Atwater's appeal was frivolous. Atwater requests that his conviction be set aside and that he be granted a new trial.

January 21, 1992—The district court reinstates Atwater's direct appeal to this court. The court finds from the record of the proceedings that Atwater's court-appointed counsel on his initial appeal failed to comply with the requirements of *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), *reh'g denied* 388 U.S. 924, 87 S. Ct. 2094, 18 L. Ed. 2d

1377, in that counsel did not fully develop and argue potential issues which could result in a reversal.

## ASSIGNMENTS OF ERROR

Atwater assigns as error that the district court abused its discretion in failing to grant a new trial at the time of the original motion for new trial and that the district court abused its discretion in failing to grant a new trial based upon his motion for postconviction relief.

## ANALYSIS

Atwater's motion for new trial filed on September 7, 1982, was based upon several grounds, but only the claim of newly discovered evidence is considered. A motion for new trial must be filed within 10 days after the verdict unless the motion is based upon newly discovered evidence. Neb. Rev. Stat. § 29-2103 (Reissue 1989). Since the jury verdict was entered on April 15, 1982, Atwater's motion was not timely except on the basis of newly discovered evidence.

Before trial, Atwater filed a motion for discovery which requested the court to order the State to produce any and all evidence or facts favorable to Atwater and all police reports.

During the trial, the security guard who was working at the McDonald's restaurant which was robbed testified that Atwater took the guard's watch, wallet, and revolver during the robberies. The guard testified that his wallet had been returned to him, but he did not mention the revolver. Following Atwater's conviction and sentencing, the State disclosed that the revolver had been recovered before the trial began. The revolver was found nearby when Atwater's brother was arrested a short time after the robberies.

At the November 22, 1982, hearing on the second motion for new trial, defense counsel submitted two juror affidavits which stated:

> Had this new evidence been available, the defense could have shown that Alonzo had not only possession of a gun similar to the hold-up gun, but also, three weeks later, had possession of the same gun that was stolen during the robbery from the McDonald's security guard.

> If this new evidence is true, it would have raised a strong

doubt and would change my verdict to not guilty in the case of Lawrence Atwater.

Exhibit 1 was also introduced, which showed that the Omaha Police Division notified the security guard's employer that the revolver could be recovered from the police after March 26, 1982. A supplementary report included in exhibit 1 indicated that it had been determined the revolver was the same gun as that taken from a security guard during a robbery.

At the September 25, 1991, hearing on the application for postconviction relief, evidence was introduced which showed that prior to Atwater's 1982 trial, the prosecutor was uncertain as to the location of the revolver involved in the robberies. The evidence also showed that defense counsel was not aware of the evidence involving the location of the revolver and the possible possession of the revolver by Atwater's brother until 5 months after the trial. Evidence as to police procedures relating to a weapon seized in this type of incident showed that the revolver should have been retained until the disposition of the case and that a report of the seizure of the revolver should have been given to the prosecutor within 24 hours.

Atwater asserts that the failure of the State to disclose exculpatory information following an order for discovery was a denial of due process and a violation of state law. He argues that the district court therefore abused its discretion by not granting him a new trial. Atwater claims that the State has a constitutional duty to disclose exculpatory information and that the evidence involving the revolver was material to his defense.

Neb. Rev. Stat. § 29-2101 (Reissue 1989) provides:

A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following reasons affecting materially his substantial rights: . . . (5) newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial.

Newly discovered evidence must actually be newly discovered, and it may not be evidence which could have been discovered and produced at trial with reasonable diligence. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993).

The granting of a motion for new trial depends on the facts and circumstances of each case. Here, the court stated in its order denying the second motion for new trial:

The evidence submitted on behalf of the defendant is evidence that the Court finds could have been discovered with reasonable diligence at the time of trial and that the newly-discovered evidence is not sufficient to justify vacating the judgment verdict of the jury or to indicate to this Court that the verdict of a jury would be different than originally found. The evidence submitted was from a close relative, being the defendant's brother, who cooperated completely with the defendant during the course of the trial and could fairly be explained by the State to the jury.

There is a strong question with regard to the admissibility of the newly-discovered evidence since the evidence with regard to when the gun was discovered in the possession or constructive possession of defendant's brother was remote in time from the date of the commission of the crime charged against defendant and it is not unusual that the fruits of a crime can be found in the possession of people other than those charged with the crime where a substantial period of time intervenes.

It is the Court's opinion that in any subsequent trial that evidence concerning the gun would not properly be admissible.

Our standard of review is whether the district court abused its discretion in denying Atwater's second motion for new trial. See *State v. Hirsch, ante* p. 31, 511 N.W.2d 69 (1994). Judicial abuse of discretion means that the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in the matter submitted for disposition. *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994).

At a hearing on November 22, 1982, Atwater's counsel stated that she had received a copy of the police report about a week earlier. The court found that the evidence submitted on behalf of Atwater could have been discovered with reasonable diligence at the time of the trial. Atwater has failed to

demonstrate that the court's finding is wrong.

We next determine whether the failure of the State to disclose the information regarding the revolver was a denial of due process. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Thus, whether the prosecutor deliberately withheld the information or negligently failed to provide the information to defense counsel is immaterial.

In *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the Court held that the prosecutor has a duty to disclose evidence material to the guilt or punishment of the defendant even if no requests are made for the evidence. At the same time, the Court held that the prosecution does not have a duty to provide defense counsel with unlimited disclosure of all information known by the prosecutors, but if the subject matter is material or if a substantial basis for claiming it is material exists, it is reasonable to require the prosecutor to furnish the information. The duty of disclosure is not measured by the actions of the prosecutor, but is based upon the character of the evidence. The U.S. Constitution does not demand discovery of all information which might influence the jury. The mere possibility that an item of undisclosed information might have aided the defense or might have affected the outcome of the trial does not establish materiality of the evidence in a constitutional sense. *Id.*

In Nebraska, a criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial, it would probably have produced a substantially different result. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993). However, under *Agurs*, when the evidence has been withheld by the prosecutor, the proper standard is that a constitutional error has been committed if the omitted evidence creates a reasonable doubt of guilt that otherwise did not exist. The *Agurs* Court stated that the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence would probably

have resulted in acquittal.

The *Agurs* standard is used when the newly discovered evidence was available to the prosecution and is not evidence that was discovered from a neutral source after the trial. For this reason, the defendant's burden is less than a demonstration that the evidence would probably result in an acquittal. Thus, Atwater would be entitled to a new trial if the evidence involving the revolver would have created a reasonable doubt that Atwater committed the robberies. However, "[i]f there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Agurs*, 427 U.S. at 112-13.

Atwater contends that the evidence of the revolver's being found in close proximity to his brother was sufficient, according to the affidavits of at least two of the jurors, to create a reasonable doubt that Atwater committed the robberies at the McDonald's restaurant.

The robberies for which Atwater was convicted occurred on January 7, 1982, at the McDonald's restaurant at 2410 Cuming Street in Omaha. During the robberies, in addition to cash, a gun was taken from the security guard, Theodore P. McQuatters. Atwater's second request for a new trial was based on his claim that he learned after the trial that McQuatters' gun had been recovered from a location near where Atwater's brother was arrested on February 16, 1982. Atwater claims that the police knew about the recovery of the revolver but failed to inform his attorney and that if the jury had been informed about the revolver's recovery, the outcome of the trial would have been different because the jury would have believed it was Atwater's brother who committed the robberies.

We consider such evidence to determine whether it would have created a reasonable doubt with regard to Atwater's guilt where such doubt did not previously exist. Several weeks passed between the time of the robberies and the time the gun was located. The discovery of the revolver in close proximity to Atwater's brother did not create a reasonable doubt as to Atwater's guilt. Atwater's brother testified at the trial, and the jury had the opportunity to consider the possibility that he was the guilty party.

The evidence presented at the trial showed that each employee who was asked to identify the robber was able to identify Atwater as the perpetrator. Carol Barr, a cook at McDonald's, had taken out the trash as the restaurant was closing. As she returned to the restaurant, a man began walking beside her and asked her who was inside the restaurant. She told him it was the crew, the managers, and a security guard. The man asked her if the security guard was black or white and asked her about the restaurant's safe. The man told Barr to act as if she was busy, and after they walked back into the restaurant, the man took out a gun and told Barr to get one of the managers to come to the back room.

As Barr proceeded to call a manager, she was met by Eric Howard, a cook, who was coming to check on Barr because she had been gone for 15 minutes. Howard saw Barr through a window as she tried to indicate to him that he should call for help. He looked through the window and saw a man with a cap over his head, who then came through the door. The man pushed Howard against a door, stuck a gun to Howard's head, and said, " 'Don't say anything.' " One of the managers, Ronald Parker, also went to check on Barr. As Parker headed toward the back of the restaurant, Barr appeared with a man behind her who was holding a gun. The man told everyone to move to the front of the restaurant and told the managers to give him the restaurant's money.

Rose Mary Stennis, a cashier, said she saw the other manager, Charlotte Moore, run to the front as she said, " 'Don't shoot, take everything, just don't hurt nobody.' " Stennis turned around and saw a man coming toward the front with a gun. The man went through the counters toward the front and said he wanted all the money. Parker and Moore collected the money in the cash register drawers in McDonald's sacks and retrieved the money from the safe. The man then went to the security guard, stuck the gun in his side, and removed his gun, his wallet, and his watch. The man told the other employees to empty their pockets, and he put the security guard's wallet in the sack with the money and said, " 'Nobody move, don't nobody move.' "

All the employees were able to describe the robber. Barr described him as wearing a dark blue ski mask with white trim,

a brown leather jacket, and work gloves. Barr stated that the robber had large eyes which were bloodshot and that he had a full mustache. McQuatters said the robber was a black male wearing gloves and a mask, but McQuatters could see the robber's eyes, which were large and protruded a bit. McQuatters told police that the robber was wearing a blue ski mask and a brown knee-length leather jacket covered by a blue jacket and that the robber had a heavy mustache, dark complexion, and "bulgy-type" eyes. Cynthia McCroy, a supervisor, stated that the robber wore a ski mask, but that she remembered his eyes because they were large "bug eyes" and his lips because they were wider than normal. Howard said the robber had a large nose, thick lips, and large, nervous eyes. Stennis said the robber had a bushy mustache and "buggy" eyes. Moore described him as having big eyes and a heavy mustache.

Within 2 days of the robberies, the employees were shown a mug book containing more than 200 photographs, and Barr, Parker, Howard, Stennis, and Moore all identified the perpetrator, who was later identified as Atwater. From a lineup on January 9, 1982, at police headquarters, Barr, Parker, McCroy, Stennis, and Moore all identified Atwater as the robber.

Officer Richard Swircinski, who supervised the lineup, stated that Atwater's brother had the same physical description as Atwater and that both had mustaches, but Atwater's brother was not placed in the lineup because he was not a suspect in the robberies. Prior to trial, a hearing was held in which Atwater took part in an additional lineup that also included his brother and two other individuals chosen by Atwater. Barr, Parker, Howard, and Stennis all identified Atwater as the robber. At trial, Barr, McQuatters, McCroy, Howard, Stennis, Parker, and Moore all identified Atwater as the robber.

At trial, Atwater's brother was called as a defense witness. Atwater's brother said he had been arrested the same night as Atwater, but he was not placed in a lineup. He invoked the Fifth Amendment when he was asked whether he had a gun with him when he was driving around with Atwater, whether he committed the robberies, whether he had been shot in a

robbery, whether Atwater committed the robberies, whether he helped with the robberies, whether he split the proceeds with Atwater, whether he was in possession of a weapon used in a robbery, or whether he was outside the McDonald's during the robberies.

Atwater is entitled to a new trial only if the newly discovered evidence would create a reasonable doubt where no reasonable doubt existed previously. Based on the extensive identification evidence, no reasonable doubt as to Atwater's guilt existed previously, and the newly discovered evidence did not create a reasonable doubt. The identification evidence was more than sufficient to convict Atwater. Where there is no reasonable doubt about guilt based on the evidence presented at the original trial, there is no justification for a new trial. *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The fact that the revolver taken during the robberies was found weeks later in close proximity to Atwater's brother does not create a reasonable doubt as to Atwater's guilt where none existed previously. The evidence is more than sufficient to support the jury's verdict, and we decline to find that Atwater is entitled to a new trial.

The verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Parks, ante* p. 205, 511 N.W.2d 774 (1994).

The decision of the district court is affirmed.

AFFIRMED.