STATE OF NEBRASKA, APPELLEE, V.
RYAN E. LYKENS, APPELLANT.

703 N.W.2d 159

Filed August 30, 2005.   No. A-04-844.

850

Avis R. Andrews for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

INBODY, Chief Judge.

## INTRODUCTION

After a jury trial in the district court for Dodge County, Nebraska, Ryan E. Lykens was convicted of one count of robbery; he now appeals that conviction. For the reasons set forth herein, we reverse Lykens' conviction and remand the cause for a new trial.

## STATEMENT OF FACTS

On November 1, 2003, an individual entered a convenience store in Fremont, Nebraska. The individual displayed a gun to the clerk on duty and demanded that she give him the money out of the cash register and a carton of cigarettes. The clerk gave the individual roughly $130 in cash and a carton of cigarettes. The individual then left the store and fled on foot. When police responded to the scene, the clerk described the individual as a white male, approximately 22 years of age, 5 feet 7 inches tall and 140 pounds with a line of blond facial hair. The clerk said that the individual was wearing a dark-colored, waist-length jacket.

On November 3, 2003, Lykens entered a Fremont police station. He intended to surrender himself, as he believed that there was an outstanding warrant for his arrest on an unrelated offense. Sgt. Robert Buer of the Fremont Police Department saw Lykens and believed that Lykens fit the general description of the individual who had committed the robbery at the convenience store. Sergeant Buer asked Lykens about his whereabouts during the time of the robbery, and Lykens indicated that he was en route from Ohio to Nebraska at the time of the robbery. Lykens did confirm that he was currently living with his sister in Fremont. Lykens consented to having his picture taken to be placed in a photographic lineup. After Sergeant Buer completed his questioning of Lykens, Lykens was arrested on an outstanding arrest warrant for a March 2003 offense of "driving under the influence."

Lykens was charged with the robbery by an information filed on December 9, 2003. On January 9, 2004, Lykens filed two motions to suppress; one of the motions was to suppress the statements he made to police officers on November 3, 2003, and the other motion was to suppress the physical evidence gathered by law enforcement personnel "for the reason that said evidence was

obtained pursuant to an illegal search and seizure or was otherwise obtained without sufficient probable cause." On February 24, 2004, both motions to suppress were overruled. A trial was held in the instant case on May 4 through 7. On May 5, Lykens made a motion for a mistrial based on juror misconduct, and that motion was denied.

On May 7, 2004, the jury found Lykens guilty of robbery. On May 17, Lykens filed a motion for new trial, alleging that there was irregularity in the proceedings of the court, that the verdict was not sustained by sufficient evidence or was contrary to law, and that an error of law occurred at the trial. On June 16, the district court sentenced Lykens to 2 to 5 years' imprisonment for the robbery conviction. On June 21, Lykens filed a supplemental motion for new trial on the basis of "[n]ewly discovered evidence material for [Lykens] which he could not with reasonable diligence have discovered and produced at the trial." On July 1, the district court denied both the motion for new trial and the supplemental motion for new trial. Lykens timely appealed to this court. Additional facts will be discussed during our analysis of Lykens' assignments of error.

## ASSIGNMENTS OF ERROR

Lykens assigns as error the district court's failure to grant his motion to dismiss at the end of the State's case in chief, his motion for a mistrial, his motion to suppress the statements he made to police, and his supplemental motion for a new trial.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an

abuse of that discretion. *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004).

■ A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004).

## ANALYSIS

*Motion to Suppress.*

We first address Lykens' assertion that the district court's ruling on his motion to suppress statements he made to police was clearly erroneous. As noted above, a trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Faber, supra.* In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

In its order overruling Lykens' motion to suppress, the district court found:

> During the late night hours of November 3, 2003, [Lykens] voluntarily entered the public lounge area of the Fremont Police Station and told the officers on duty that he came to surrender himself on what he suspected was an outstanding warrant. Officers . . . of the Fremont Police Department contacted the dispatcher to determine if, in fact, there was a warrant for [Lykens]. Sergeant Buer of the Fremont Police Department observed [Lykens] in the public lounge area and believed that he matched the general description given of the robbery suspect at the [convenience store]. While the dispatcher was attempting to verify the existence of an outstanding warrant for [Lykens], Sergeant Buer asked [Lykens] several questions. He inquired as to where [Lykens] was currently residing and [asked] several questions regarding [Lykens'] whereabouts during the [convenience store] robbery on November 1,

2003. [Lykens] was cooperative and cool during the question[s] by Sergeant Buer. . . . After the question-and-answer period between Sergeant Buer and [Lykens], Sergeant Buer left the police station.

During the questioning by Sergeant Buer, [Lykens] was not in handcuffs and was in the public lounge area of the police station, which was unlocked. He had previously not been a suspect of the robbery and was free to leave at any time during the questioning by Sergeant Buer.

. . . No Miranda warnings were given to [Lykens] prior to the questioning by Sergeant Buer.

The district court then noted that Lykens' motion to suppress alleged that "since no Miranda warnings were given to him . . . any statements made by him violated [his] uncounseled Fifth Amendment privilege against self-incrimination." In overruling Lykens' motion, the district court noted that Lykens voluntarily went to the police station, that there was no arrest or restraint on Lykens' freedom of movement, and that all questioning took place in an unlocked public lobby in the police station. The court then found that "from the totality of the circumstances, all statements made by [Lykens] in the lounge of the Fremont Police Station were . . . not the result of a custodial interrogation and, therefore, not a violation of [Lykens'] privilege against self-incrimination."

After a thorough review of the record, we are unable to say that the district court's findings of fact were clearly erroneous. There is ample evidence in the record to support the trial court's findings that Lykens' statements were made voluntarily and that they were not the result of custodial interrogation. Accordingly, the district court's ruling on Lykens' motion to suppress his statements was proper.

*Supplemental Motion for New Trial Based on Newly Discovered Evidence.*

Lykens next alleges that the district court abused its discretion when it overruled his supplemental motion for a new trial based on newly discovered evidence. He originally filed a motion for a new trial on May 17, 2004, and then filed a supplemental motion for new trial on June 21. In his supplemental motion, Lykens

asserted that he had "[n]ewly discovered evidence material for [Lykens] which he could not with reasonable diligence have discovered and produced at the trial."

The supplemental motion was supported by the affidavits of Dawn Lykens, who is Lykens' mother, and Avis Andrews, who is Lykens' attorney. In Dawn's affidavit, she asserts that she

visited [Lykens] in the Dodge County Jail; that on one such visit in March, 2004, [Dawn] was in the visitation room and happened to talk to a man also in the visitation room waiting for a visit with his son, later identified as Thomas Brainard; that a third individual, . . . also present in the visitation room, initiated a conversation with Thomas Brainard that was overheard by [Dawn]; that Thomas Brainard stated he was visiting his son, Joseph Brainard, who had been sentenced to ten days for robbery; that [Dawn] then said her son, [Lykens], was accused of robbing [the convenience store]; that Thomas Brainard then said that it was his son[, Joseph Brainard,] who had robbed [the convenience store] and that [Joseph Brainard] had done it once before too; [and that] at that point, the inmates were brought in for visitation and no further conversation among the three waiting took place.

Dawn further stated in her affidavit that she "was contacted by [detectives] regarding this conversation in April 2004; that [she] related the incident as set forth [above] to the detectives; [and] that [she] also told them that [the third individual] had heard the conversation."

Andrews also filed an affidavit. In her affidavit, Andrews asserts that "law enforcement investigated the information regarding statements made by Thomas Brainard and[,] following said investigation, the results were conveyed to [Andrews] by the [Dodge] County Attorney in a letter dated April 27, 2004." The letter notes:

Law enforcement has figured out that the person who made the comment to [Dawn] was Thomas Brainard of Hooper, Nebraska. [He] advised the police that he recalled meeting [Dawn] while visiting his son[, Joseph Brainard,] in the county jail in March, 2004. When he asked [Dawn] why her son was in jail, she said he was charged with the

[convenience store] robbery. [Thomas] Brainard replied to her that [Joseph Brainard] had robbed [that convenience store] also. When the police asked him what he meant by that comment, he said he was referring to an earlier shoplifting incident when . . . Joseph Brainard had stolen some beer from the [convenience store].

. . . Apparently Thomas Brainard, Joseph [Brainard's] father, would equate the term of shoplifting and robbery or robbing, which is what he explained to the detectives when they spoke with him.

The affidavit of Andrews further asserts that she "attempted to contact Thomas Brainard independently but was only able to locate a message number for him [and] did not receive a call from [him] until after both sides had rested at the trial[,] at which time he made a statement similar" to that described in the county attorney's letter.

Andrews further asserted in her affidavit that "on June 10, 2004, [she] first became aware that Joseph Brainard was interviewed by the Fremont Police Department on April 27, 2004, upon reading the same as part of the presentence investigation report prepared by the Probation Office for use in this case." Andrews alleged that the interview with Joseph Brainard

constitutes newly discovered evidence material to this cause of action in light of the statements of Thomas Brainard, the resemblance of Joseph Brainard to the perpetrator, the statement by Joseph Brainard that he is a smoker and owns a BB gun shaped like a pistol, and his history of theft from [a similar convenience store].

A hearing on the motion for new trial and supplemental motion for new trial was held on June 28, 2004. At the hearing, the court took judicial notice of the affidavits filed by Andrews and Dawn and accepted a transcript of the April 27 interview of Joseph Brainard conducted by officers of the Fremont Police Department into evidence. A thorough review of the transcript of the interview indicates that at the time of the interview, he was 18 years old, stood 5 feet 7 inches to 5 feet 8 inches tall, had facial hair, had a history of shoplifting, including an incident when he shoplifted from a similar convenience store, was a smoker, had access to a gun similar to the one described by the

clerk in the instant case's convenience store robbery, and occasionally wore hats. The interview also indicates that the officers conducting the interview took pictures of Joseph Brainard, but the pictures were not included with the transcript.

At the hearing on the supplemental motion for new trial, Andrews asserted:

> [O]ur whole defense was that . . . Lykens did not commit this crime and, therefore, someone else must have committed this — did commit this crime. And late in the progress of this case, the name of Joseph Brainard came up through comments made by [Thomas Brainard], as indicated in the affidavits. And, in fact, [the transcript of Joseph Brainard's interview] itself indicates a connection with [a similar convenience store], that he is basically the same age [and] height as the individual that robbed [the convenience store], that he's a smoker, that he had access to a BB gun, which was alleged to be the . . . weapon used in the robbery, all of these very similar to the identity of the traits used to identify the suspect in this particular case. That's why we feel that this additional information is important. I think it[s] importance is borne out by the fact that it was included in the [presentence investigation report] and that it would serve as a basis for a new trial.

The district court took the matter under advisement at the conclusion of the hearing and subsequently denied both of Lykens' motions for new trial on July 1, 2004.

■ We first note that in a motion for discovery, Lykens had specifically requested "[t]he name, address, recent photo and the criminal history of each male known to local law enforcement meeting the general description given of the perpetrator of the alleged robbery and having a criminal history of any nature." While this specific request was denied by the trial court, the Nebraska Supreme Court has previously noted:

> [T]he prosecutor has a duty to disclose evidence material to the guilt or punishment of the defendant even if no requests are made for the evidence. [T]he prosecution does not have a duty to provide defense counsel with unlimited disclosure of all information known by the prosecutors, but if the subject matter is material or if a substantial basis for claiming

it is material exists, it is reasonable to require the prosecutor to furnish the information.

*State v. Atwater*, 245 Neb. 746, 752, 515 N.W.2d 431, 435 (1994). See *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). Thus, if the newly discovered evidence relied upon by Lykens is material or if a substantial basis for claiming it is material exists, the lack of a discovery order is irrelevant.

Neb. Rev. Stat. § 29-2101 (Cum. Supp. 2004) provides:

A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: . . . (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial . . . .

One moving for new trial on the basis of newly discovered evidence must show that the evidence was uncovered since the trial, that the evidence was not equally available before the trial, and that the evidence was not simply discovered by the exercise of belated diligence. *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002). Generally, newly discovered evidence is evidence material to the defense that could not with reasonable diligence have been discovered and produced in the prior proceedings. *Id.*

We next address whether or not the evidence relied upon by Lykens is in fact "newly discovered evidence." The record shows that Dawn became aware of an alternate suspect, namely Joseph Brainard, in March 2004. She notified the police about the possibility of this alternate suspect. On or about April 27, Andrews was contacted by letter by the county attorney for Dodge County. The letter notified her that the police had identified the individual Dawn spoke with as Thomas Brainard, the father of Joseph Brainard, and that Thomas Brainard apparently "would equate the term of shoplifting and robbery or robbing, which is what he explained to the detectives when they spoke with him." Further, the record shows that Andrews made reasonable efforts to contact Thomas Brainard, but that she only had a message number for him and that her efforts were unsuccessful until after the prosecution and defense had rested at trial on May 6.

The record reflects that on April 27, 2004, police interviewed Joseph Brainard at the Fremont police station. He denied committing the robbery for which Lykens was convicted. However, he did appear to match the physical description of the individual who committed the robbery, had access to a gun similar to the one used in the robbery, and had committed numerous shoplifting offenses, including from a similar convenience store, in the past. The transcript of this interview was first seen by the defense after the trial, when it was included in the presentence investigation report. In light of this, we conclude that the transcript of the interview with Joseph Brainard does constitute newly discovered evidence because it is evidence material to the defense that could not with reasonable diligence have been discovered and produced in the prior proceedings. We next address whether the district court abused its discretion when it denied Lykens' supplemental motion for new trial based upon this newly discovered evidence.

In *State v. Atwater*, 245 Neb. 746, 515 N.W.2d 431 (1994), the Nebraska Supreme Court dealt with the issue of when a motion for new trial based on newly discovered evidence is properly granted. The court first provided the following regarding a defendant's constitutional rights when the State fails to disclose information:

> In *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the [U.S. Supreme] Court held that the prosecutor has a duty to disclose evidence material to the guilt or punishment of the defendant even if no requests are made for the evidence. At the same time, the Court held that the prosecution does not have a duty to provide defense counsel with unlimited disclosure of all information known by the prosecutors, but if the subject matter is material or if a substantial basis for claiming it is material exists, it is reasonable to require the prosecutor to furnish the information. The duty of disclosure is not measured by the actions of the prosecutor, but is based upon the character of the evidence. The U.S. Constitution does not demand discovery of all information which might influence the jury. The mere possibility that an item of undisclosed information might have aided the defense or might

have affected the outcome of the trial does not establish materiality of the evidence in a constitutional sense. *Id.*

*State v. Atwater*, 245 Neb. at 752, 515 N.W.2d at 434-35. Therefore, if the subject matter of the information that the State fails to disclose is material or if a substantial basis for claiming it is material exists, the State is required to furnish that information.

The Nebraska Supreme Court then indicated what must be shown by a criminal defendant in order to justify the grant of a new trial based on newly discovered evidence:

> In Nebraska, a criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial, it would probably have produced a substantially different result. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993). However, under [*United States v.*] *Agurs*, [427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976),] when the evidence has been withheld by the prosecutor, the proper standard is that a constitutional error has been committed if the omitted evidence creates a reasonable doubt of guilt that otherwise did not exist. The *Agurs* Court stated that the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence would probably have resulted in acquittal.
>
> The *Agurs* standard is used when the newly discovered evidence was available to the prosecution and is not evidence that was discovered from a neutral source after the trial. For this reason, the defendant's burden is less than a demonstration that the evidence would probably result in an acquittal. Thus, [the *Atwater* defendant] would be entitled to a new trial if the evidence involving the revolver [at issue in his newly discovered evidence claim] would have created a reasonable doubt that [he] committed the robberies. However, "[i]f there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Agurs*, 427 U.S. at 112-13.

*State v. Atwater*, 245 Neb. 746, 752-53, 515 N.W.2d 431, 435 (1994).

A literal reading of *Atwater*, then, indicates the following: When the "newly discovered" evidence has been withheld by the prosecutor, a motion for new trial based on newly discovered evidence is properly granted if the omitted evidence *would have created* a reasonable doubt that the defendant committed the alleged crime or crimes.

However, such a standard would not reduce the burden on a defendant when the State withholds evidence; in fact, it would raise the burden. Normally, when the "newly discovered" evidence is attained from a neutral source, a criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial, it *would probably have produced a substantially different result.* This is a less strenuous burden for a defendant than is proving that the omitted evidence *would have created a reasonable doubt* that the defendant committed the alleged crime or crimes.

█ A careful reading of *Atwater, supra*, indicates that the Nebraska Supreme Court intended to make it easier, not harder, for defendants to be granted a new trial based on newly discovered evidence when that evidence is withheld by the prosecution. Because a literal reading of *Atwater* would produce an unreasonable result, we interpret the Nebraska Supreme Court's opinion to mean that in cases when the evidence alleged to be newly discovered was withheld by the State, a defendant is entitled to a new trial if the omitted evidence *could have created* a reasonable doubt that he or she committed the alleged crime or crimes.

A review of the interview with Joseph Brainard suggests that he matched the physical description given by the clerk on duty at the convenience store at the time of the robbery as closely as, if not more closely than, did Lykens. The interview also indicates that Joseph Brainard had access to a BB gun matching the description of the gun used in the robbery. He further had a history of shoplifting, including from a similar convenience store. We further note that the transcript of the interview provided in the presentence investigation report is missing a page. At the bottom of page 7 of the transcript of the interview, Joseph Brainard claims to be "5'7", 5'8" about," and then at the top of page 9, he is discussing the kinds of cigarettes he prefers. It appears from the record before us that Lykens has professed his

innocence in the instant case since the time he was first accused. Had he been able to provide the jury with an alternate suspect who could have committed the crime in the instant case, reasonable doubt could have been created in the minds of the jurors. After thoroughly reviewing the transcript of the police interview with Joseph Brainard, we conclude that the district court did in fact abuse its discretion when it denied Lykens' supplemental motion for new trial. Lykens' conviction is therefore reversed, and the cause is remanded for a new trial.

## CONCLUSION

We find that the district court properly denied Lykens' motion to suppress the statements he made to police. However, we further find that the district court abused its discretion when it denied Lykens' supplemental motion for new trial based upon newly discovered evidence. Because we find that Lykens' conviction must be reversed on that ground, we decline to address Lykens' additional assignments of error. We reverse Lykens' conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.