STATE OF NEBRASKA, APPELLEE, V.
RYAN E. LYKENS, APPELLANT.

710 N.W.2d 844

Filed March 10, 2006.   No. S-04-844.

Avis R. Andrews for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Following a jury trial, Ryan E. Lykens was convicted of robbery and was sentenced to imprisonment for a term of 2 to 5 years. The district court for Dodge County denied Lykens' motions for new trial. On appeal, the Nebraska Court of Appeals determined that the trial court had abused its discretion by denying Lykens' supplemental motion for new trial. The Court of Appeals reversed Lykens' conviction and remanded the cause for a new trial. *State v. Lykens*, 13 Neb. App. 849, 703 N.W.2d 159 (2005).

The State petitioned for further review, asserting that the Court of Appeals erred in finding that the prosecution had withheld evidence from Lykens and in applying the wrong standard to determine whether such nondisclosure required a new trial. We granted the State's petition for further review. We reverse, and remand to the Court of Appeals for further proceedings.

## STATEMENT OF FACTS

In its opinion, the Court of Appeals described the facts of this case as follows:

On November 1, 2003, an individual entered a convenience store in Fremont, Nebraska. The individual displayed a gun to the clerk on duty and demanded that she give him the money out of the cash register and a carton of cigarettes. The clerk gave the individual roughly $130 in cash and a carton of cigarettes. The individual then left the store and fled on foot. When police responded to the scene, the clerk described the individual as a white male, approximately 22 years of age, 5 feet 7 inches tall and 140 pounds with a line of blond facial hair. The clerk said that the individual was wearing a dark-colored, waist-length jacket.

On November 3, 2003, Lykens entered a Fremont police station. He intended to surrender himself, as he believed that there was an outstanding warrant for his arrest on an unrelated offense. Sgt. Robert Buer of the Fremont Police Department saw Lykens and believed that Lykens fit the general description of the individual who had committed the robbery at the convenience store. Sgt. Buer asked Lykens about his whereabouts during the time of the robbery, and Lykens indicated that he was en route from Ohio to Nebraska at the time of the robbery. Lykens did confirm that he was currently living with his sister in Fremont. Lykens consented to having his picture taken to be placed in a photographic lineup. After Sgt. Buer completed his questioning of Lykens, Lykens was arrested on an outstanding arrest warrant for a March 2003 offense of "driving under the influence."

Lykens was charged with the robbery by an information filed on December 9, 2003. On January 9, 2004, Lykens filed two motions to suppress; one of the motions was to suppress the statements he made to police officers on November 3, 2003, and the other motion was to suppress the physical evidence gathered by law enforcement personnel "for the reason that said evidence was obtained pursuant to an illegal search and seizure or was otherwise obtained without sufficient probable cause." On February 24, 2004, both motions to suppress were overruled. A trial was held in the instant case on May 4 through 7. On May 5, Lykens made a motion for a mistrial based on juror misconduct, and that motion was denied.

On May 7, 2004, the jury found Lykens guilty of robbery. On May 17, Lykens filed a motion for new trial, alleging that there was irregularity in the proceedings of the court, that the verdict was not sustained by sufficient evidence or was contrary to law, and that an error of law occurred at the trial. On June 16, the district court sentenced Lykens to 2 to 5 years' imprisonment for the robbery conviction. On June 21, Lykens filed a supplemental motion for new trial on the basis of "[n]ewly discovered evidence material for [Lykens] which he could not with

reasonable diligence have discovered and produced at the trial." On July 1, the district court denied both the motion for new trial and the supplemental motion for new trial.

*State v. Lykens*, 13 Neb. App. 849, 851-52, 703 N.W.2d 159, 162-63 (2005).

In addition to the evidence against Lykens noted by the Court of Appeals, the record shows that the clerk who was working at the convenience store the night of the robbery identified Lykens as the robber both in a photographic lineup and in court at trial. There was also evidence that following the robbery, Lykens was in possession of cigarette packs that were of the same brand and lot number as a carton found disposed of outside the convenience store shortly after the robbery. The lot number also matched a carton still in stock at the store. Further, there was evidence that Lykens owned a jacket fitting the description of the jacket worn by the robber, that Lykens owned a BB gun, and that Lykens lived within a 5-minute walk of the convenience store.

Lykens appealed to the Court of Appeals and assigned that the district court had erred in (1) failing to grant his motion to dismiss based on insufficient evidence at the end of the State's evidence, (2) overruling his motion for mistrial due to a juror's knowledge of and relationship with a potential witness, (3) overruling his motion for new trial based on "newly discovered evidence," and (4) overruling his motions to suppress. The Court of Appeals rejected Lykens' assignment of error relating to the motions to suppress but concluded that the district court had abused its discretion in denying Lykens' supplemental motion for new trial.

With respect to Lykens' supplemental motion for new trial, the Court of Appeals noted the following:

The supplemental motion was supported by the affidavits of Dawn Lykens, who is Lykens' mother, and Avis Andrews, who is Lykens' attorney. In Dawn's affidavit, she asserts that she "visited [Lykens] in the Dodge County Jail; that on one such visit in March, 2004, [Dawn] was in the visitation room and happened to talk to a man also in the visitation room waiting for a visit with his son, later identified as Thomas Brainard; that a third individual, . . .

also present in the visitation room, initiated a conversation with Thomas Brainard that was overheard by [Dawn]; that Thomas Brainard stated he was visiting his son, Joseph Brainard, who had been sentenced to ten days for robbery; that [Dawn] then said her son, [Lykens], was accused of robbing [the convenience store]; that Thomas Brainard then said that it was his son[, Joseph Brainard,] who had robbed [the convenience store] and that [Joseph Brainard] had done it once before too; [and that] at that point, the inmates were brought in for visitation and no further conversation among the three waiting took place."

Dawn further stated in her affidavit that she "was contacted by [detectives] regarding this conversation in April 2004; that [she] related the incident as set forth [above] to the detectives; [and] that [she] also told them that [the third individual] had heard the conversation."

Andrews also filed an affidavit. In her affidavit, Andrews asserts that "law enforcement investigated the information regarding statements made by Thomas Brainard and[,] following said investigation, the results were conveyed to [Andrews] by the [Dodge] County Attorney in a letter dated April 27, 2004." The letter notes: "Law enforcement has figured out that the person who made the comment to [Dawn] was Thomas Brainard of Hooper, Nebraska. [He] advised the police that he recalled meeting [Dawn] while visiting his son[, Joseph Brainard,] in the county jail in March, 2004. When he asked [Dawn] why her son was in jail, she said he was charged with the [convenience store] robbery. [Thomas] Brainard replied to her that [Joseph Brainard] had robbed [that convenience store] also. When the police asked him what he meant by that comment, he said he was referring to an earlier shoplifting incident when . . . Joseph Brainard had stolen some beer from the [convenience store]. . . . Apparently Thomas Brainard, Joseph [Brainard's] father, would equate the term of shoplifting and robbery or robbing, which is what he explained to the detectives when they spoke with him." The affidavit of Andrews further asserts that she "attempted to contact Thomas Brainard independently but was only able to locate

a message number for him [and] did not receive a call from [him] until after both sides had rested at the trial[,] at which time he made a statement similar" to that described in the county attorney's letter.

Andrews further asserted in her affidavit that "on June 10, 2004, [she] first became aware that Joseph Brainard was interviewed by the Fremont Police Department on April 27, 2004, upon reading the same as part of the pre-sentence investigation report prepared by the Probation Office for use in this case." Andrews alleged that the interview with Joseph Brainard "constitutes newly discovered evidence material to this cause of action in light of the statements of Thomas Brainard, the resemblance of Joseph Brainard to the perpetrator, the statement by Joseph Brainard that he is a smoker and owns a BB gun shaped like a pistol, and his history of theft from [a similar convenience store]."

A hearing on the motion for new trial and supplemental motion for new trial was held on June 28, 2004. At the hearing, the court took judicial notice of the affidavits filed by Andrews and Dawn and accepted a transcript of the April 27 interview of Joseph Brainard conducted by officers of the Fremont Police Department into evidence. A thorough review of the transcript of the interview indicates that at the time of the interview, he was 18 years old, stood 5 feet 7 inches to 5 feet 8 inches tall, had facial hair, had a history of shoplifting, including an incident when he shoplifted from a similar convenience store, was a smoker, had access to a gun similar to the one described by the clerk in the instant case's convenience store robbery, and occasionally wore hats. The interview also indicates that the officers conducting the interview took pictures of Joseph Brainard, but the pictures were not included with the transcript.

At the hearing on the supplemental motion for new trial, Andrews asserted: "[O]ur whole defense was that ... Lykens did not commit this crime and, therefore, someone else must have committed this — did commit this crime. And late in the progress of this case, the name

of Joseph Brainard came up through comments made by [Thomas Brainard], as indicated in the affidavits. And, in fact, [the transcript of Joseph Brainard's interview] itself indicates a connection with [a similar convenience store], that he is basically the same age [and] height as the individual that robbed [the convenience store], that he's a smoker, that he had access to a BB gun, which was alleged to be the . . . weapon used in the robbery, all of these very similar to the identity of the traits used to identify the suspect in this particular case. That's why we feel that this additional information is important. I think it[s] importance is borne out by the fact that it was included in the [presentence investigation report] and that it would serve as a basis for a new trial." The district court took the matter under advisement at the conclusion of the hearing and subsequently denied both of Lykens' motions for new trial on July 1, 2004.

*State v. Lykens*, 13 Neb. App. 849, 855-57, 703 N.W.2d 159, 164-66 (2005).

In reviewing the denial of Lykens' supplemental motion for new trial, the Court of Appeals first determined that the transcript of the interview with Joseph Brainard (hereinafter Brainard) had been withheld by the State and that it constituted newly discovered evidence because it was evidence material to the defense that could not with reasonable diligence have been discovered and produced in the prior proceedings. The Court of Appeals then concluded that the court should have granted the motion for new trial based on such newly discovered evidence.

In reaching its conclusion, the Court of Appeals relied on certain language in *State v. Atwater*, 245 Neb. 746, 515 N.W.2d 431 (1994), and interpreted *Atwater* "to mean that in cases when the evidence alleged to be newly discovered was withheld by the State, a defendant is entitled to a new trial if the omitted evidence *could have created* a reasonable doubt that he or she committed the alleged crime or crimes." *Lykens*, 13 Neb. App. at 861, 703 N.W.2d at 168. Using this interpretation, the Court of Appeals determined that the interview with Brainard would have allowed Lykens "to provide the jury with an alternate suspect who could have committed the crime in the instant case,"

and "reasonable doubt could have been created in the minds of the jurors." *Id.* at 862, 703 N.W.2d at 169. The Court of Appeals therefore concluded that the district court abused its discretion in denying Lykens' motion for new trial based on newly discovered evidence.

The Court of Appeals reversed Lykens' conviction and remanded the cause for a new trial. Because of its disposition of the appeal on the basis of the new trial issue, the Court of Appeals did not consider Lykens' assignments of error relating to the motion to dismiss and the motion for mistrial.

The State petitioned for further review of the Court of Appeals' decision. We granted the petition.

## ASSIGNMENTS OF ERROR

The State asserts on further review that the Court of Appeals erred in determining that the evidence in question had been withheld by the State. The State further argues that even if the evidence had been withheld, the Court of Appeals applied the wrong standard to determine whether the district court erred in denying the motion for new trial based on such evidence.

## STANDARD OF REVIEW

■■ In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Lykens' Motion for New Trial Should Be Analyzed*
*as a* Brady *Issue.*

Although Lykens framed his supplemental motion for new trial as based on "[n]ewly discovered evidence," in substance, the basis on which Lykens sought a new trial was a claim that the prosecution violated its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose material evidence favorable to the defendant. Because Lykens

framed the issue as one regarding "newly discovered evidence," the parties and the Court of Appeals analyzed the issue using a mix of principles regarding newly discovered evidence and principles relating to the prosecution's claimed failure to disclose evidence favorable to the defendant. We conclude that the Court of Appeals analyzed Lykens' supplemental motion for new trial under the wrong principles.

The substance of Lykens' allegations in support of his supplemental motion for new trial was that the State had failed to disclose the police interview of Brainard to Lykens prior to trial. Lykens claimed that such evidence was favorable to him and that therefore, the State should have disclosed the interview to him prior to trial. Although Lykens described such evidence as being "newly discovered evidence," the claims Lykens made in support of his motion for new trial are more akin to those made by the defendants in cases such as *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004); *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003); and *State v. Castor*, 257 Neb. 572, 599 N.W.2d 201 (1999), which we analyzed under *Brady*. In *Shipps*, we described the defendant's basis for new trial as an assertion that "the State wrongfully withheld exculpatory material . . . depriving [the defendant] of a fair trial under U.S. Const. amend. XIV and Neb. Const. art. I, § 3." 265 Neb. at 352, 656 N.W.2d at 631. Our cases echo the language in *Brady*, which language states that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87.

Despite Lykens' references in the supplemental motion for new trial to "newly discovered evidence," his allegations in support of the motion were in substance an assertion that the State had wrongfully withheld exculpatory material in contravention of *Brady*, and we determine that the motion should have been analyzed as raising a *Brady* issue. Therefore, it was not necessary for the Court of Appeals to consider whether the interview was "newly discovered evidence" and instead, it was only necessary to consider whether, under the standards discussed below, the evidence was "wrongfully" withheld by the State such that Lykens was deprived of a fair trial.

*The* Brady *Issue Raised by Lykens' Motion for New Trial Should Be Analyzed Under the* Bagley *Standard.*

■ We recently observed in *Shipps, supra,* that the State's duty to disclose exculpatory evidence to the defendant was recognized by the U.S. Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In *Shipps,* we referred to *Brady* and stated that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." 265 Neb. at 352, 656 N.W.2d 631. Accord *Castor, supra.* We note that although *Brady* spoke of the suppression of evidence "upon request," the Court in *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), made clear that the prosecution's duty under *Brady* to disclose evidence which is material covers "the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused." See, also, *Strickler v. Greene,* 527 U.S. 263, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (duty to disclose material evidence applicable even though there has been no request by accused and duty may be violated where evidence has been suppressed either willfully or inadvertently).

■ In *Bagley,* the U.S. Supreme Court considered what evidence is material such that its nondisclosure was prejudicial to the defendant. The standard for materiality set forth in *Bagley* formed the basis for the *"Bagley* standard," which standard we have adopted and set forth in cases such as *State v. Shipps,* 265 Neb. 342, 656 N.W.2d 622 (2003), and *State v. Castor,* 257 Neb. 572, 599 N.W.2d 201 (1999). In *Shipps,* we stated:

> Favorable evidence is material, and constitutional error results from its suppression by the State, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. . . . A reasonable probability of a different result is accordingly shown when the State's evidentiary suppression undermines confidence in the outcome of the trial.

*Shipps,* 265 Neb. at 352, 656 N.W.2d at 631-32 (citing *Castor, supra*). Accord, *State v. Faust,* 269 Neb. 749, 696 N.W.2d 420

(2005); *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004); *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675 (1999); *State v. Lotter*, 255 Neb. 456, 586 Neb. 591 (1998); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *State v. Jackson*, 231 Neb. 207, 435 N.W.2d 893 (1989).

Notwithstanding our adoption and consistent application of the *Bagley* standard, the Court of Appeals focused upon incidental language in *State v. Atwater*, 245 Neb. 746, 752, 515 N.W.2d 431, 435 (1994), which referred to *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), which language stated that "when the evidence has been withheld by the prosecutor, the proper standard is that a constitutional error has been committed if the omitted evidence creates a reasonable doubt of guilt that otherwise did not exist." Utilizing this language in *Atwater*, the Court of Appeals incorrectly concluded that "in cases when the evidence alleged to be newly discovered was withheld by the State, a defendant is entitled to a new trial if the omitted evidence *could have created* a reasonable doubt that he or she committed the alleged crime or crimes." *State v. Lykens*, 13 Neb. App. 849, 861, 703 N.W.2d 159, 168 (2005).

The "reasonable doubt" standard set forth by the U.S. Supreme Court in *Agurs* and mentioned in *Atwater* was superseded in *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). We must therefore disapprove *Atwater* to the extent it can be read to indicate that the "reasonable doubt" standard of *Agurs* rather than the *Bagley* standard is the proper standard to analyze whether evidence was wrongfully withheld by the prosecution. Similarly, we disapprove of the "could have created a reasonable doubt" language in the Court of Appeals' opinion in *Lykens*, and reiterate that the *Bagley* standard is the appropriate framework under which to analyze a *Brady* issue raised in a motion for new trial.

*Applying the* Bagley *Standard to the* Brady *Issue—There Was No* Brady *Violation.*

In view of our discussion above, we determine that Lykens' supplemental motion for new trial should properly have been analyzed as a *Brady* issue and that the *Bagley* standard should have been used to analyze whether the Brainard interview was

material. Lykens claims that the Brainard interview could have been useful at trial to support Lykens' theory that the robbery was committed by another individual. The State responds that the nondisclosure of the interview did not deprive Lykens of a fair trial. The parties do not dispute that the interview of Brainard was evidence that the State had in its possession and did not disclose to Lykens prior to trial. This fact is sufficient to establish that the evidence was "withheld," and the question in this case is therefore properly analyzed as a *Brady* issue.

We begin by noting that the mere determination that evidence was withheld does not automatically indicate that the prosecution violated its *Brady* duty. As the U.S. Supreme Court stated in *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999),

> the term *"Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called *"Brady* material"—although, strictly speaking, there is never a real *"Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

The U.S. Supreme Court continued: "There are three components of a true *Brady* violation: the evidence at issue must be favorable to the accused either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. at 281-82. It has been observed that "[p]rejudice in this context is interchangeable with the concept of materiality . . . ." 5 Wayne R. Lafave et al., Criminal Procedure § 24.3(b) at 232 (2d ed. Supp. 2006).

In view of the foregoing, the relevant inquiry in this case is whether the nature of the evidence at issue was such that the State's failure to disclose it to Lykens prior to trial violated Lykens' due process rights. We conclude that in this case, the evidence was not material under the *Bagley* standard and that therefore, the State's failure to disclose it did not violate Lykens' due process rights and was not a sufficiently serious nondisclosure so as to arise to a *Brady* violation. Therefore, the district court did not abuse its discretion by denying Lykens' supplemental motion

for new trial, and the Court of Appeals' conclusion to the contrary was error.

As noted above, the State has a duty under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose exculpatory evidence that is material, and favorable evidence is material under the *Bagley* standard "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Shipps*, 265 Neb. 342, 352, 656 N.W.2d 622, 631 (2003). In this regard, in *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), the U.S. Supreme Court stated: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in [the absence of the nondisclosed evidence] he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

We now focus on the Brainard interview while noting that Brainard was not a witness. In the interview, Brainard provided a physical description of himself and stated that he smoked cigarettes and occasionally wore hats. Brainard stated that he had fired BB guns in the past, but he did not state that he owned one. Although Brainard admitted that he had shoplifted, he denied that he had ever robbed a convenience store using a gun, and he specifically denied that he had committed the robbery that was the subject of this prosecution. The interview evidence was not of an impeaching nature, nor did it serve directly to exculpate Lykens. We do not think that the absence of the Brainard interview denied Lykens a fair trial, and on the contrary, the guilty verdict is worthy of confidence. See *Kyles, supra.* We conclude that there is not a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. We conclude there was no *Brady* violation.

Because we determine that there was no *Brady* violation resulting from the State's nondisclosure of the evidence at issue, we conclude that the district court did not err in denying a new trial on the basis of such evidence. The Court of Appeals therefore erred in reversing the district court's denial of Lykens' supplemental motion for new trial and in remanding the cause

for a new trial, and accordingly, we reverse the ruling of the Court of Appeals.

## CONCLUSION

We conclude that the Court of Appeals used an improper standard to analyze whether the nondisclosure of the Brainard interview required a new trial. We further conclude that the Court of Appeals erred in concluding that the district court had abused its discretion by denying Lykens' supplemental motion for new trial and in therefore reversing Lykens' conviction and remanding for a new trial. Accordingly, we reverse the Court of Appeals' decision.

We note that neither party sought further review of the Court of Appeals' conclusion that the district court did not err in denying Lykens' motion to suppress, and that conclusion is the law of the case. Therefore, although we reverse the Court of Appeals' decision with respect to the motion for new trial, we do not disturb the decision with respect to the motion to suppress. We further note that because of its disposition of the new trial issue, the Court of Appeals did not consider Lykens' assignments of error with respect to his motion to dismiss and his remaining motion for mistrial. We therefore reverse, and remand to the Court of Appeals to consider Lykens' remaining assignments of error.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.